**GUTRIDE SAFIER LLP**

Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
  todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Lisa Starratt; Russell Luke Hayes, Jr.; and Melissa Fumiko Ryan, on behalf of themselves and those similarly situated, | Case No. _____ |
| Plaintiffs, | Class Action Complaint |
| v. | Jury Trial Demanded |
| Immedia Semiconductor LLC; and Amazon.com Services LLC, | |
| Defendants. | |

Plaintiffs Lisa Starratt, Russell Luke Hayes, Jr., and Melissa Fumiko Ryan (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendants Immedia Semiconductor LLC and Amazon.com Services LLC (collectively, "Defendants"). Plaintiffs' allegations against Defendants are based upon information and belief and upon investigation of Plaintiffs' counsel, except for allegations specifically pertaining to Plaintiffs, which are based upon Plaintiffs' personal knowledge.

## Introduction

1.    This case concerns Defendants' false and deceptive marketing and sale of their Blink security cameras (the "Blink Cameras"). Although Defendants prominently represent in their marketing that the Blink Cameras enable consumers to view security footage at "1080p" video quality, they do not. To the contrary, the actual video quality that the Blink Cameras provide is significantly lower than 1080p.[1]

2.    Video resolution is a critical factor that consumers consider in determining what security camera to purchase. Higher resolution cameras are desirable because they enable recorded subjects to be identified with greater accuracy and at longer distances. A security camera system with true 1080p resolution is capable of producing a crisp image that can enable users to identify subjects by their faces, hair, clothing, tattoos, and other indicia. Security cameras with 1080p video quality command a higher price than cameras with lower resolutions.

---

[1] As used in this Complaint, including in the definition of the Class, the terms "Blink Camera" and "Blink Cameras" shall refer exclusively to Blink security cameras that were advertised as having 1080p resolution.

3.      Defendants understand the importance of video quality to consumers, and deliberately market the Blink Cameras in a way that deceives consumers into falsely believing that they will obtain a much higher video quality than the Blink Cameras can actually provide.

4.      Defendants made their false 1080p resolution claims throughout the Class Period in all of their product marketing, including the product listings on Amazon.com, as well as on the specifications and marketing materials provided to other online merchants and brick and mortar stores.

5.      Defendants never disclosed to consumers that the Blink Cameras are incapable of providing video quality concomitant with 1080p resolution.

**Parties**

6.      Plaintiff Lisa Starratt is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Walnut Creek, California. Plaintiff Starratt makes her permanent home in California and intends to remain in California.

7.      Plaintiff Russell Luke Hayes, Jr. is, and at all times alleged in this Class Action Complaint was, an individual and a resident of San Jose, California. Plaintiff Hayes makes his permanent home in California and intends to remain in California.

8.      Plaintiff Melissa Fumiko Ryan is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Chula Vista, California. Plaintiff Ryan makes her permanent home in California and intends to remain in California.

9.      Defendant Immedia Semiconductor LLC is a limited liability company existing under the laws of the State of Delaware, having its principal place of

business in Seattle, Washington. Information filed with the California Secretary of State indicates that the company's three managers or members—Antonio Masone, Jamie Siminoff, and Michael Deal—are all located in Seattle, Washington.

10.   Defendant Amazon.com Services LLC is a limited liability company existing under the laws of the State of Delaware, having its principal place of business in Seattle, Washington. Information filed with the California Secretary of State indicates that the company's manager and/or member, Michael Deal, is located in Seattle, Washington.

11.   In late 2017, Amazon.com Inc., the parent company of Defendant Amazon.com Services LLC, acquired Defendant Immedia. Since that time, Immedia and Amazon.com Services LLC have worked together closely to develop and market the Blink Cameras.

12.   At all times herein mentioned, each of the Defendants was the agent, servant, representative, officer, director, partner or employee of the other Defendants and, in doing the things herein alleged, was acting within the scope and course of his/her/its authority as such agent, servant, representative, officer, director, partner or employee, and with the permission and consent of each Defendant.

13.   At all times herein mentioned, each of the Defendants was a member of, and engaged in, a joint venture, partnership and common enterprise, and acted within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

14.   At all times herein mentioned, the acts and omissions of each of the Defendants concurred and contributed to the various acts and omissions of each

and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

15.    At all times herein mentioned, each of the Defendants ratified each and every act or omission complained of herein.

16.    At all times herein mentioned, each of the Defendants aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages, and other injuries, as herein alleged.

**Jurisdiction and Venue**

17.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. Section 1332(d)(2)(A) because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) Plaintiffs and Defendants are citizens of different states.

18.    This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

19.    The injuries, damages and/or harm upon which this action is based occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from, the State of California. Defendants regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from products provided to persons in the State of California. Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of California.

20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the State of California, including within this District.

21.    In accordance with California Civil Code Section 1780(d), each plaintiff concurrently files herewith a declaration establishing that, at various times throughout the class period, he or she purchased one or more Blink Cameras while located in California. (*See* Exhibits A, B, and C.)

22.    Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

## Substantive Allegations

**A.    Image Resolution is Critical to Purchasers of Security Cameras.**

23.    In the security camera industry, image resolution is everything. The higher a camera's resolution, the more likely it is that suspects can be identified by faces, hair, clothing, tattoos, and other indicia in the security footage—especially as the distance between the camera and the subject increases. Camera resolution often makes the difference between being able to identify a subject, and having worthless security footage.

24.    A "1080p" security camera system is one that is capable of producing security images with 2,073,600 distinct pixels. Specifically, 1080p camera systems record and provide images at 1,920 distinct pixels horizontally by 1,080 distinct pixels vertically.

25.  **Distinct** pixel density is critical to the crispness of an image. For

example, compare the following images:



Figure 1



Figure 2

26.    Both images are the same size: 1,920 pixels wide and 1,080 pixels high. Further, both images contain the same number of pixels: 2,073,500. However, the second image has only one-tenth the number of *distinct* pixels as the first image.[2] The loss in pixel density severely degrades the image quality, making it difficult or impossible to identify the subjects.

**B.    Defendants Advertise the Blink Cameras as Being Capable of Providing 1080p Security Footage.**

**1.    The Blink Mini Camera**

27.    Defendants prominently market the Blink Cameras as being capable of providing 1080p security footage. The very title of the Blink Mini camera listing on Amazon, for example, includes the words "1080p HD video":[3]

Blink Mini – Compact indoor plug-in smart security camera, 1080p HD video, night vision, motion detection, two-way audio, easy set up, Works with Alexa – 1 camera (White)

(https://www.amazon.com/Blink-Mini-White-1Cam/dp/B07X6C9RMF).

28.    The page also includes an image of the camera, with the following overlay:



Day & Night
HD Video

(*Id.*)

---

[2] To achieve this comparison, Figure 1 was compressed to 192 x 108 pixels (i.e., 1/10[th] its original size), and then upscaled back to its original size of 1,920 x 1,080 pixels to create Figure 2.

[3] The letters "HD" are short for "high-definition." When the phrases "HD" or "high-definition" are used with respect to 1080p products, they refer to "Full HD," which means that the product has a resolution of 1,920 pixels wide and 1,080 pixels high.

29.    The first bullet point in the description then states as follows:

- Monitor the inside of your home day and night with our 1080P HD indoor plug-in smart security camera with motion detection and two-way audio.

(*Id.*)

30.    Next, the listing highlights the purported HD resolution in large letters:

## See what's happening live in HD video anytime – day or night

See the inside of your home on your smartphone no matter where you are with Blink Mini's HD video and built-in infrared night vision.

(*Id.*)

31.    Finally, the "Technical Details" section of the listing, the following statement is made:

| Camera resolution | Record and view in 1080p HD video during the day and with infrared HD night vision after dar |
|---|---|

(*Id.*)

32.    Based on these representations, consumers reasonably believe that when they use a Blink Mini, they will be able to view both live and recorded video of a quality concomitant with 1080p resolution.

### 2.    The Blink XT Camera

33.    The same is true of the Blink XT Camera. The first image of the camera on its Amazon listing states that the camera is "1080p HD":

1

2



3

4

5    (https://www.amazon.com/Blink-Home-Security-Existing-

6    Customer/dp/B06XQ7MBJ8).

7        34.    The Amazon page contains a second image of the camera, asserting

8    that it has a "1080p HD resolution":

9

10   

11

12   (*Id*).

13       35.    The assertion is then repeated throughout the Amazon listing, including

14   in the specifications:

15

16   | Camera resolution | Up to 1080p Full HD Resolution |
     | --- | --- |

17

18   (*Id.*)

19       36.    The listing also asserts that users can enjoy the HD resolution when the

20   camera is monitored live:

21

22

23   

24

25

26

---

(*Id.*)

37.   Based on these representations, consumers reasonably believe that when they use a Blink XT camera, they will be able to view both live and recorded video of a quality concomitant with 1080p resolution.

**C.   Other Blink Cameras**

38.   Defendants have marketed and sold a variety of other Blink Cameras, which they falsely claim provide 1080p video quality, including:

- Blink Indoor;
- Blink Outdoor;
- Blink Video Doorbell;
- Blink Floodlight Camera; and
- Blink XT2

Defendants have also sold these cameras in a variety of different sets or packages, such as packages that include multiple cameras, solar panel charging units, or other Amazon products. The "1080p" and "HD" claims with respect to all of these cameras are identical to the claims Defendants make with respect to the Blink Mini and Blink XT cameras. All of these supposedly "1080p" cameras are included in the term "Blink Cameras," as used herein.

39.   Based on Defendants' representations with respect to each and every Blink Camera, consumers reasonably believe that when they use a Blink Camera, they will be able to view both live and recorded video of a quality concomitant with 1080p resolution.

**D.   Third-Party Retailers**

40.   Although, on information and belief, Defendant Amazon.com Services LLC is the primary retailer of Blink Cameras, the cameras are also sold on other

websites, and through brick-and-mortar stores like Best Buy. Defendants provide these third-party retailers with specifications and marketing materials representing that the Blink Cameras are 1080p. (*See, e.g.*, https://www.bestbuy.com/site/blink-mini-indoor-1080p-wi-fi-security-camera-2-pack-white/6401019.p?skuId=6401019 (stating that the Blink Mini camera is "1080p").) Because of these inaccurate specifications and marketing material, every retailer who sells Blink Cameras represents that they are 1080p. Accordingly, any consumer who purchases a Blink Camera reasonably believes, based on Defendants' representations, that they will be able to view both live and recorded video in 1080p resolution.

### E.   The Blink Cameras Are Not Capable of Providing 1080p Resolution.

41.    Despite Defendants' marketing, the Blink Cameras are not capable of providing 1080p resolution.

42.    Indeed, the resolution produced by the Blink Cameras is so significantly inferior to 1080p that one can readily distinguish between images produced by the cameras and images produced by a true 1080p camera.

43.    To test the Blink Cameras' capabilities, video was taken of a subject at a distance of ten feet. The Blink Mini camera was chosen for the test, because it has the latest technology of the Blink Cameras. The video subject was an individual holding a hardcover book with text in various font sizes. One video clip was taken using the Blink Mini, and the other clip was taken using a true 1080p video camera. After the video was taken, the image from the true 1080p camera

was normalized to account for slight lens width differences,[4] and cropped to focus on the subject's face and book cover:



| Blink Mini at 10 feet | True 1080p video at 10 feet |

44.     As the images above show, the image taken by the Blink Mini at only ten feet is at such a low resolution that the subject cannot be identified, and the title of the book cannot be discerned. Indeed, one cannot even tell that the subject is wearing a necklace. In contrast, the image taken by the true 1080p camera is far sharper—the subject can be identified; the fact that she is wearing a necklace is clear; and the title of the book can be discerned.[5]

---

[4] The lens of the true 1080p video camera had a slightly wider angle, meaning that if anything, the comparison was unfair to the 1080p video camera: wider angle lenses capture more of the room, sacrificing detail of any particular subject in the process.

[5] It is recommended that the images in this brief be viewed in PDF format on a computer screen; printing this brief may cause loss in image quality, depending on the printer used.

45.    At twenty feet, the differences became even more stark:

 

Blink Mini at 20 feet                    True 1080p video at 20 feet

46.    At twenty feet, the Blink Mini has lost nearly all facial features. In comparison, the true 1080p image is clear enough that one may still be able to identify the subject.

47.    The same is true of all Blink Cameras, which use either the same or older camera technology as the Blink Mini. None of the Blink Cameras offer 1080p-quality video, and all would be significantly outperformed in a comparison with a true 1080p camera.

**F.    The Actual Image Quality of Blink Cameras is Between Approximately 360p and 432p.**

48.    To estimate the true image quality of the Blink Cameras, the footage from the true 1080p camera at ten feet was reduced to various lower resolutions, and then upscaled back to 1,920 pixels wide and 1,080 pixels high. These

1   resulting images were then compared to the image produced by the Blink Mini

2   camera at ten feet. This experiment revealed that the Blink Mini's actual image

3   quality is approximately 360p.

4       49.    The footage from the true 1080p camera reduced to 720p, 540p, and

5   432p is still higher quality than the Blink footage (which claims to be 1080p):

 

Blink Mini, 10'            720p Video (reduced from 1080p), 10'

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26



Blink Mini, 10'                    540p Video (reduced from 1080p), 10'

Blink Mini, 10'                    432p Video (reduced from 1080p), 10'

1
2
3
4
5
6
7
8
9
10
11
12
13

 

| Blink Mini, 10' | 360p Video (reduced from 1080p), 10' |

14    50.    As the images above show, the Blink Mini's image quality cannot

15    compete with 720p video quality (i.e., 1,280 x 720 pixels), nor can it compete

16    with 540p quality (i.e., 960 x 540 pixels). Rather, it is closer to 432p quality (i.e.,

17    768 x 432 pixels) or even 360p quality (i.e., 640 x 360 pixels). Accordingly, even

18    being generous to Defendants, they have been exaggerating the Blink Cameras'

19    capabilities by at least 250%.

20    **G.    Plaintiffs' Experiences**

21         **1.    Lisa Starrett**

22    51.    In March 2021, Plaintiff Lisa Starrett was shopping for security

23    cameras. She was specifically looking for security cameras that had the highest

24    resolution possible while still being within her budget. Seeking high-resolution

25    cameras was important to her because she understood that subjects can be more

26    easily identified in video recorded at higher resolutions.

52.     During her shopping process, she visited Amazon.com and located the Blink Mini security camera. She read the entire listing on Amazon, including the various representations that the camera was "1080p" (*see supra*, Section I.B.1). She also saw that the camera was within her budget.

53.     Based on the representations she saw on Amazon.com, Ms. Starrett purchased two Blink Mini security cameras from Amazon on or about March 27, 2021, for a total of $64.99.

54.     After she installed and used the cameras, Ms. Starrett was disappointed in the image quality they produced. She had believed, based on the "1080p" representation she had read on Amazon, that the image quality would have been substantially more clear than the image quality she got from the cameras.

55.     Had Ms. Starrett known that the Blink Mini security cameras were not capable of providing video quality concomitant with 1080p resolution, she would not have purchased them or, at a minimum, would have paid less for them.

### 2.     Russell Hayes, Jr.

56.     In October 2018, Plaintiff Russell Hayes, Jr. was shopping for a security camera. He was specifically looking for a security camera that had the highest resolution possible while still being within his budget. Seeking high-resolution cameras was important to him because he understood that subjects can be more easily identified in video recorded at higher resolutions.

57.     During his shopping process, he visited Amazon.com and located the Blink XT security camera. He read the entire listing on Amazon, including the various representations that the camera was "1080p" (*see supra*, Section I.B.2). He also saw that the camera was within his budget.

58.    Based on the representations he saw on Amazon, Mr. Hayes purchased one Blink XT camera system from Amazon in October 2018, for $129.99.

59.    After he installed and used the camera, Mr. Hayes was disappointed in the image quality it produced. He had believed, based on the "1080p" representation he had read on Amazon, that the image quality would have been substantially more clear than the image quality he got from the camera.

60.    In April 2020, Mr. Hayes decided to expand his security system by adding another camera. Although the Blink had disappointed him, he understood that if he bought a camera of a different brand, it would not work with his Blink system, and he would therefore need to use two separate apps to check his security video. Further, he hoped that he might have better luck with a Blink Mini camera, because it was a newer technology than his Blink XT camera.

61.    During his shopping process, he visited Amazon.com and located the Blink Mini security camera. He read the entire listing on Amazon, including the various representations that the camera was "1080p" (*see supra*, Section I.B.1). He also saw that the camera was within his budget.

62.    Based on the representations he saw on Amazon.com, Mr. Hayes purchased one Blink Mini camera from Amazon in April 2020, for $34.99

63.    After he installed and used the camera, Mr. Hayes was disappointed in the image quality it produced. The quality appeared to be no better than that of his Blink XT.

64.    Two years later, in May 2022, Mr. Hayes decided to expand his security system again, by adding two more cameras. By this time, he was already locked into the Blink Camera system. He begrudgingly purchased two additional Blink Mini cameras from Amazon in May 2022, for $34.99.

65.    Had Mr. Hayes known before his initial purchase that the Blink security cameras were not capable of providing video quality concomitant with 1080p resolution, he would not have purchased them or, at a minimum, would have paid less for them.

### 3.    Melissa Ryan

66.    In October 2020, Plaintiff Melissa Ryan was shopping for security cameras. She was specifically looking for security cameras that had the highest resolution possible while still being within her budget. Seeking high-resolution cameras was important to her because she understood that subjects can be more easily identified in video recorded at higher resolutions.

67.    During her shopping process, she visited Amazon.com and located the Blink Mini security camera. She read the entire listing on Amazon, including the various representations that the camera was "1080p" (*see supra*, Section I.B.1). She also saw that the camera was within her budget.

68.    Based on the representations she saw on Amazon.com, Ms. Ryan purchased one Blink Mini security camera from Amazon on or about October 25, 2020.

69.    After she installed and used the camera, Ms. Ryan was disappointed in the image quality it produced. She had believed, based on the "1080p" representation she had read on Amazon, that the image quality would have been substantially more clear than the image quality she got from the camera.

70.    Had Ms. Ryan known that the Blink Mini security camera was not capable of providing video quality concomitant with 1080p resolution, she would not have purchased it or, at a minimum, would have paid less for it.

**H.    Consumer and Reviewer Complaints**

71.    Plaintiffs are not the only purchasers who have noticed the poor image quality of the Blink Cameras. One professional device reviewer stated that the image "has a lot of artifacting," ("Blink Mini Unbox & Setup Guide," The Net Guy, 2022-01-21, https://www.youtube.com/watch?v=7JqSeBMt3Qg, at 4:50.) He concluded that, "to me, it reminds me of a 720 resolution, especially when it's doing that frame differencing and all that compression artifacting." (*Id.* at 5:32-5:42.) By "720 resolution," the reviewer was referring to 720p resolution, which is 1,280 x 720 pixels—significantly lower than 1080p.

72.    In a June 2022 comparison of outdoor camera brands, including Blink, Reolink, Eufy, Ring, Arlo, and Nest, the Blink Outdoor camera came in dead last when it came to video quality, receiving a score of zero out of five. (*See* "Best Outdoor wireless WIFI Security Cameras of 2022—Relink, Eufy, Ring, Arlo, Nest, Wyze, Blink," LifeHackster, 2022-06-23, https://www.youtube.com/watch?v=BhrP2HwxDaA, at 7:03-7:16.)

73.    One commenter on a Reddit thread posted a comprehensive review of Blink cameras, and stated: "They are not high-resolution cameras. They're more 'See when someone came onto your property and what they did' than 'Get a useful image of their face.'" (https://www.reddit.com/r/blinkcameras/comments/us4rv1/is_blink_that_bad/).

74.    Another commenter on the same thread stated:

> I now call my Blink cameras my Lucky cameras. You're lucky to record a person or car walking or driving onto your property. You're lucky to have good battery life. You're lucky to see a notification when you get one. You're lucky to be able to ID a person when they rip-off your Amazon package. I could go on but you get my drift. I have a number of Blink cameras and have invested more

> than enough time and money that I could have purchased a
> good CCTV System that work as real security cameras.

(*Id.* (misspellings corrected)*.*)

## Class Allegations

75.    In addition to their individual claims, Plaintiffs bring this action

pursuant to Rule 23 of the Federal Rules of Civil Procedure.

76.    Plaintiffs bring this class action lawsuit on behalf of a proposed class of

similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal

Rules of Civil Procedure, defined as follows:

> "The Class": All natural persons who, between August 19,
> 2018 and the present, purchased a Blink Camera while
> located in California.

77.    This action has been brought and may properly be maintained as a class

action against Defendants because there is a well-defined community of interest

in the litigation and the proposed class is easily ascertainable.

78.    Numerosity: Plaintiffs do not know the exact size of the Class, but they

estimate that the Class is composed of more than 5,000 persons. The persons in

the Class are so numerous that the joinder of all such persons is impracticable and

the disposition of their claims in a class action rather than in individual actions

will benefit the parties and the courts.

79.    Common Questions Predominate:  This action involves common

questions of law and fact to the Class because each class member's claim derives

from the deceptive, unlawful and/or unfair statements and omissions that led

consumers to believe that the Blink Cameras are capable of providing 1080p

resolution. The common questions of law and fact predominate over individual

questions, as proof of a common or single set of facts will establish the right of

each member of the Class to recover. The questions of law and fact common to the Class are:

- whether the Blink Cameras are capable of providing video quality concomitant with 1080p resolution;

- whether the Blink Cameras can record video of a quality that is concomitant with 1080p resolution;

- whether users can view 1080p-quality video from the Blink Cameras on users' devices;

- whether Defendants unfairly, unlawfully and/or deceptively misrepresented that the Blink Cameras are capable of providing 1080p-quality resolution; that they can record 1080p-quality video; and that users can view 1080p-quality video from the Blink Cameras on users' devices.

- whether the use of the term "1080p" in Defendants' marketing violated Federal and/or California state law;

- whether the advertising of the Blink Cameras as being capable of 1080p-quality resolution caused them to command a premium in the market as compared with similar products that do not make such a claim;

- whether Defendants' advertising and marketing regarding the Blink Cameras sold to the class members was likely to deceive the class members and/or was unfair;

- whether a "1080p" claim on product advertising is material to a reasonable consumer;

- whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

- the amount of profits and revenues earned by Defendants as a result of the conduct;
- whether class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and
- whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

80.    Typicality: Plaintiffs' claims are typical of the claims of other members of the Class because, among other things, all such claims arise out of the same unlawful course of conduct in which Defendants engaged. Plaintiffs and those similarly situated purchased the Blink Cameras in reliance on Defendants' misrepresentations and omissions that they are "1080p" cameras, capable of providing 1080p-quality video. Thus, they and the class members sustained the same injuries and damages arising out of Defendants' conduct in violation of the law. The injuries and damages of each class member were caused directly by Defendants' wrongful conduct in violation of law as alleged.

81.    Adequacy of Representation: Plaintiffs will fairly and adequately protect the interests of all class members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs also have no interests that are in conflict with, or antagonistic to, the interests of class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the classes. By prevailing on their own claims, Plaintiffs will establish Defendants' liability to all class

members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

82.    Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the classes will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the classes may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

83.    Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

1

2

**CAUSES OF ACTION**

3

**First Cause of Action**

4

**(Violation of the Consumers Legal Remedies Act (the "CLRA"), California**
**Civil Code § 1750, *et seq.*)**

5

**(On Behalf of Plaintiffs and the Class)**

6     84.    Plaintiffs reallege and incorporate by reference all paragraphs alleged

7     herein.

8     85.    Defendants' actions, representations and conduct have violated, and

9     continue to violate the CLRA, because they extend to transactions that are

10    intended to result, or which have resulted, in the sale or lease of goods or services

11    to consumers.

12    86.    Plaintiffs and other class members are "consumers" as that term is

13    defined by the CLRA in California Civil Code § 1761(d).

14    87.    The Blink Cameras that Plaintiffs (and other similarly situated class

15    members) purchased from Defendants constitute "goods" within the meaning of

16    California Civil Code § 1761(a).

17    88.    Defendants' acts and practices, set forth in this Class Action

18    Complaint, led customers to falsely believe that the Blink Cameras are capable of

19    providing 1080p-quality resolution; that the Blink Cameras could record video in

20    1080p resolution; and that users could view 1080p-quality video recorded by the

21    Blink Cameras on users' devices. By engaging in the actions, representations and

22    conduct set forth in this Class Action Complaint, Defendants have violated, and

23    continue to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), § 1770(a)(8), and §

24    1770(a)(9) of the CLRA. In violation of California Civil Code § 1770(a)(2),

25    Defendants' acts and practices constitute improper representations regarding the

26    source, sponsorship, approval, or certification of the goods they sold. In violation

of California Civil Code § 1770(a)(5), Defendants' acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code § 1770(a)(7), Defendants' acts and practices constitute improper representations that the goods they sell are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code § 1770(a)(8), Defendants have disparaged the goods, services, or business of another by false or misleading representation of fact. In violation of California Civil Code § 1770(a)(9), Defendants has advertised goods or services with intent not to sell them as advertised. Finally, regarding California Civil Code § 1770(a)(8), Defendants falsely or deceptively market and advertise that the Blink Cameras have 1080p resolution, when they do not.

89.    Plaintiffs request that this Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendants are not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the Class will continue to suffer harm.

90.    CIVIL CODE § 1782 NOTICE. Plaintiffs notice and demand that within thirty (30) days from that date of the filing of this Complaint, Defendants correct, repair, replace or otherwise rectify the unlawful, unfair, false and or deceptive practices complained of herein.

91.    Should the violations herein alleged not be corrected or rectified as required by Civil Code § 1782 within 30 days with respect to all Class Members, Plaintiffs will seek to amend this Class Action Complaint to seek, on behalf of each Class Member, actual damages of at least $1,000, punitive damages, an

1    award of $5,000 for each Class Member who is a disabled person or senior

2    citizen, and restitution of any ill-gotten gains due to Defendants acts and

3    practices.

4        92.    Plaintiffs also request that this Court award them costs and reasonable

5    attorneys' fees pursuant to California Civil Code § 1780(d).

6                        **<u>Second Cause of Action</u>**

7    **False Advertising, Business and Professions Code § 17500, *et seq*. ("FAL")**
     **(On Behalf of Plaintiffs and the Class)**

8        93.    Plaintiffs reallege and incorporate by reference all paragraphs alleged

9    herein.

10       94.    Beginning at an exact date unknown to Plaintiffs, but within three (3)

11   years preceding the filing of the Class Action Complaint, Defendants made

12   untrue, false, deceptive and/or misleading statements in connection with the

13   advertising and marketing of the Blink Cameras.

14       95.    Defendants made representations and statements (by omission and

15   commission) that led reasonable customers to believe (i) that the Blink Cameras

16   are capable of providing 1080p-quality resolution; (ii) that the Blink Cameras

17   could record 1080p-quality video; (iii) that users could view 1080p-quality video

18   recorded by the Blink Cameras on users' devices.

19       96.    Plaintiffs and those similarly situated relied to their detriment on

20   Defendants' false, misleading and deceptive advertising and marketing practices,

21   including each of the misrepresentations and omissions set forth in paragraphs

22   27–40 above. Had Plaintiffs and those similarly situated been adequately

23   informed and not intentionally deceived by Defendants, they would have acted

24   differently by, without limitation, refraining from purchasing the Blink Cameras,

25   or paying less for them.

26

1  97.   Defendants' acts and omissions are likely to deceive the general public.

2  98.   Defendants engaged in these false, misleading and deceptive

3  advertising and marketing practices to increase their profits. Accordingly,

4  Defendants have engaged in false advertising, as defined and prohibited by

5  section 17500, *et seq.* of the California Business and Professions Code.

6  99.   These practices, which Defendants used, and continue to use, to their

7  significant financial gain, also constitute unlawful competition and provides an

8  unlawful advantage over Defendants' competitors as well as injury to the general

9  public.

10  100.  As a direct and proximate result of such actions, Plaintiffs and the other

11  class members have suffered, and continue to suffer, injury in fact and have lost

12  money and/or property as a result of such false, deceptive and misleading

13  advertising in an amount which will be proven at trial, but which is in excess of

14  the jurisdictional minimum of this Court.

15  101.  Plaintiffs seek, on behalf of themselves and those similarly situated,

16  full restitution of monies, as necessary and according to proof, to restore any and

17  all monies acquired by Defendants from them, the general public, or those

18  similarly situated by means of the false, misleading and deceptive advertising and

19  marketing practices complained of herein, plus interest thereon.

20  102.  Plaintiffs seek on behalf of themselves and those similarly situated, a

21  declaration that the above-described practices constitute false, misleading and

22  deceptive advertising.

23  103.  Plaintiffs seek, on behalf of themselves and those similarly situated,

24  full restitution of monies, as necessary and according to proof, to restore any and

25  all monies acquired by Defendants from Plaintiffs, the general public, or those

26

similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiffs may not be able to establish each Class member's individualized understanding of Defendants' misleading representations as described in this Complaint, but the FAL does not require individualize proof of deception or injury by absent Class members. *See, e.g., Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of deception, reliance, and injury.'"). In addition, Plaintiffs and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the FAL imposes no such *mens rea* requirement and liability exists even if Defendants acted in good faith.

104.  Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

105.  Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Defendants from continuing to engage in the false,

misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which it is not entitled. Plaintiffs, those similarly situated, and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**Third Cause of Action**
**Common Law Fraud, Deceit and/or Misrepresentation**
**(On Behalf of Plaintiffs and the Class)**

106.   Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

107.   Continuously throughout the last four years Defendants fraudulently and deceptively represented to Plaintiffs and those similarly situated that (i) the Blink Cameras are capable of providing 1080p-quality resolution; (ii) that the Blink Cameras could record 1080p-quality; and (iii) that users could view 1080p-quality video recorded by the Blink Cameras on users' devices. Further, continuously over the last four years, Defendants failed to inform Plaintiffs that the video quality provided by the Blink Cameras is less than 1080p.

108.   These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendants, not reasonably known to Plaintiffs, and material at the time they were made. Defendants knew the true capabilities of the

Blink Cameras, and they knew that the Blink Cameras were not capable of providing 1080p-quality resolution; that consumers could not record 1080p-quality video using the Blink Cameras; and that consumers could not view 1080p-quality video recorded by the Blink Cameras on users' devices. Defendants' misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to purchase the Blink Cameras. In misleading Plaintiffs and not so informing them, Defendants breached their duty to them. Defendants also gained financially from, and as a result of, their breach.

109.   Plaintiffs and those similarly situated relied to their detriment on Defendants' misrepresentations and fraudulent omissions. Had they and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation: (i) declining to purchase the Blink Cameras, or (ii) paying less for the Blink Cameras.

110.   By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Defendants fraudulently and deceptively induced them and those similarly situated to, without limitation, to purchase the Blink Cameras, including the price premium they paid for the false "1080p" representations.

111.   Plaintiffs and those similarly situated justifiably and reasonably relied on Defendants' misrepresentations and omissions, and, accordingly, were damaged by Defendants.

112.   As a direct and proximate result of Defendants' misrepresentations and/or omissions, Plaintiffs and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Blink Cameras.

113.   Defendants' conduct as described herein was willful and malicious and was designed to maximize Defendants profits even though Defendants knew that their conduct would cause loss and harm to Plaintiffs and those similarly situated.

**Fourth Cause of Action**
**Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.***
**(On Behalf of Plaintiffs and the Class)**

114.   Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

115.   Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this complaint.

116.   In particular, Defendants have engaged, and continue to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the CLRA as described herein; and (ii) the FAL as described herein.

117.   In particular, Defendants have engaged, and continue to engage, in unfair and fraudulent practices by, without limitation, the following: (i) misrepresenting in their marketing that the Blink Cameras are capable of providing 1080p-quality resolution; (ii) misrepresenting in their marketing that the Blink Cameras can record 1080p-quality video; (iii) misrepresenting in their marketing that users can view 1080p-quality video recorded by the Blink Cameras

on users' devices; and (iv) failing to inform Plaintiffs, and those similarly situated, that the representations stated in (i), (ii), and (iii) above are false.

118.  Plaintiffs and those similarly situated relied to their detriment on Defendants' unlawful, unfair, and fraudulent business practices. Had Plaintiffs and those similarly situated been adequately informed and not deceived by Defendants, they would have acted differently by, without limitation: (i) declining to purchase the Blink Cameras, or (ii) paying less for the Blink Cameras.

119.  Defendants' acts and omissions are likely to deceive the general public.

120.  Defendants engaged in these deceptive and unlawful practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

121.  These practices, which Defendants used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

122.  As a direct and proximate result of such actions, Plaintiffs and the other class members have suffered and continue to suffer injury in fact and have lost money and/or property in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.  Among other things, Plaintiffs and the class members lost the amount they paid for the Blink Cameras, and/or the price premium they paid for the Blink Cameras based on Defendants' false "1080p" representations.

123.  As a direct and proximate result of such actions, Defendants have enjoyed, and continues to enjoy, significant financial gain in an amount which

will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

124. Plaintiffs seek, on behalf of themselves and those similarly situated, equitable relief, including the restitution for the premium and/or full price that they or others paid to Defendants as a result of Defendants' conduct. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiffs may not be able to establish each Class member's individualized understanding of Defendants' misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members. *See, e.g.,* *Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire class). In addition, Plaintiffs and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the UCL imposes no such *mens rea* requirement and liability exists even if Defendants acted in good faith.

125.   Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

126.   Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Defendants from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they were not entitled. Plaintiffs and those similarly situated have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**Plaintiffs' Fifth Cause of Action**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

127.   Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

128.   Plaintiffs and members of the Class conferred a benefit on the Defendants by purchasing the Blink Cameras.

129.   Defendants have been unjustly enriched in retaining the revenues from Plaintiffs' and Class members' purchases of the Blink Cameras, which retention is unjust and inequitable, because Defendants (i) misrepresented in their marketing that the Blink Cameras are capable of providing 1080p-quality resolution;

(ii) misrepresented in their marketing that the Blink Cameras can record 1080p-quality video; (iii) misrepresented in their marketing that users can view 1080p-quality video recorded by the Blink Cameras on users' devices; and (iv) failed to inform Plaintiffs, and those similarly situated, that the representations stated in (i), (ii), and (iii) above are false. This harmed Plaintiffs and Class members because they paid a price premium as a result.

130.   Because Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court. Plaintiffs and those similarly situated have no adequate remedy at law to obtain this restitution.

131.   Plaintiffs, therefore, seek an order requiring Defendants to make restitution to them and other members of the Class.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgment against Defendants as follows:

A.   Certification of the proposed Class, including appointment of Plaintiffs' counsel as class counsel;

B.   An award of compensatory damages, including statutory damages where available, to Plaintiffs and the Class Members against Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including both pre- and post-judgment interest thereon;

C.   An order for full restitution;

1   D.  An order requiring Defendants to disgorge revenues and profits

2       wrongfully obtained;

3   E.  An order temporarily and permanently enjoining Defendants from

4       continuing the unlawful, deceptive, fraudulent, and unfair business

5       practices alleged in this Complaint;

6   F.  For reasonable attorneys' fees and the costs of suit incurred; and

7   G.  For such further relief as this Court may deem just and proper.

8                        **JURY TRIAL DEMANDED**

9   Plaintiffs hereby demand a trial by jury.

10  Dated: August 19, 2022                **GUTRIDE SAFIER LLP**

11                                         _/s Seth A. Safier_____
                                           Seth A. Safier, Esq.
12                                         Marie A. McCrary, Esq.
                                           Todd Kennedy, Esq.
13                                         100 Pine Street, Suite 1250
                                           San Francisco, CA 94111

<u>**EXHIBIT A**</u>

I, Lisa Starratt, declare:

1.     I am the Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.     I submit this Declaration pursuant to California Civil Code § 1780(d), California Code of Civil Procedure § 2015.5, and 28 U.S.C. § 1746.

3.      I purchased two Blink Mini security cameras from the Amazon.com website on or about March 2021 while located in Walnut Creek, California.

I declare under penalty of perjury under the laws of California and of the United States of America that the foregoing is true and correct.

Executed in Walnut Creek, California on  8/12/2022

LISA STARRATT
_____
Lisa Starratt

SWARTZ DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION

## **EXHIBIT B**

I, Russell Luke Hayes, Jr., declare:

1.      I am the Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Civil Code § 1780(d), California Code of Civil Procedure § 2015.5, and 28 U.S.C. § 1746.

3.       I purchased three Blink Mini security cameras, and one Blink XT security camera, from the Amazon.com website within the last three years, while located in San Jose, California.

I declare under penalty of perjury under the laws of California and of the United States of America that the foregoing is true and correct.

Executed in San Jose, California on  8/12/2022

DocuSigned by:

*Russell Hayes Jr.*

5B6188A5408F4AE

Russell Luke Hayes, Jr.

SWARTZ DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION

DocuSign Envelope ID: F5B3DF6E-4D80-4C73-BF75-651F75A1652E

## EXHIBIT C

I, Melissa Fumiko Ryan, declare:

1.      I am the Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Civil Code § 1780(d), California Code of Civil Procedure § 2015.5, and 28 U.S.C. § 1746.

3.       I purchased a Blink security camera package with receiver, and a Blink Mini security camera, from the Amazon.com website within the last three years, while located in Chula Vista, California.

I declare under penalty of perjury under the laws of California and of the United States of America that the foregoing is true and correct.

Executed in Chula Vista, California on   8/12/2022

Melissa Fumiko Ryan

SWARTZ DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION